## STANGER v. STANGER

No. 4630.   Decided March 14, 1928.   (270 P. 149.)
Rehearing Denied September 18, 1928.

*Hyrum A. Belknap,* of Ogden, for appellant.

*C. R. Hollingsworth* and *Joseph E. Evans,* both of Ogden, for respondent.

STRAUP, J.

The plaintiff brought this action against the defendant for a divorce on three statutory grounds, nonsupport, desertion, and cruelty. The complaint states a cause of action as to each. Its sufficiency is not challenged. Upon it the plaintiff prayed judgment for a divorce, the custody of

two minor children, three and two years of age, $50 a month alimony for the support of herself and of the minor children, $75 attorney's fee, and costs. The defendant, answering, admitted the marriage, the residence of the parties, the birth of the children, and that he had not supplied the plaintiff "with any of the necessaries of life," but denied his failure to do so was "willful or neglectful," and alleged that the failure "was pursuant to an agreement between the plaintiff and the defendant, made on or about November 1, 1925," the time alleged in the complaint he had deserted the plaintiff and the children. He also denied that the had "wilfully and without cause deserted and abandoned the plaintiff." He further alleged that on November 1, 1925, he and the plaintiff "had a quarrel, and thereupon mutually agreed to separate and to live separate and apart from each other"; that in pursuance of the agreement the children were taken into his custody and by him placed with his parents, who cared for them; and that he contributed to the support of the children, but had not supported plaintiff, or given her anything, since the separation. He denied the alleged cruelty.

The case was tried to the court. The plaintiff, corroborated by several witnesses, gave evidence to support each of the grounds stated in the complaint for divorce. The defendant testified in his own behalf, and called two other witnesses, but whose testimony related to mere insignificant matters, and not to any of the material issues. In his testimony he admitted that he was earning $96 a month, that he had not given his wife anything, and that when he left the plaintiff he shut off all credit at stores where theretofore supplies had been purchased by the plaintiff for household purposes and expenses, claimed he had contributed something towards the support of the children, admitted some of the alleged acts of cruelty, and denied others. The court made findings merely in this language:

"That the defendant did not for more than one year prior to the filing of this action, or at any time, willfully, or at all, neglect to

provide for plaintiff the common necessaries of life; that the defendant has not, for more than one year last past, or at any time, wilfully and without cause, or at all, deserted and abandoned the plaintiff, and that the separation of said parties was pursuant to agreement and by the consent of the plaintiff; that the defendant did not, for more than two years prior to November 1, 1925, or at any time, or at all, treat the plaintiff in a cruel and inhuman manner, and that the averments of cruelty * * * were and are not supported by the evidence."

Upon these findings, which are mere conclusions, the court rendered judgment dismissing the complaint, and required each party to pay his or her costs incurred, except $13.20 incurred by the plaintiff, which the defendant had theretofore paid, and refused to allow the plaintiff anything for attorney's fee, or for her support and maintenance, or that of the children. The plaintiff appeals, claiming that the findings are against the evidence and the judgment against law.

We have examined the record, and by the manifest weight of the evidence—indeed, there is not much conflict concerning it—it is shown that there was no agreement or mutual understanding of the parties to live separate and apart, as alleged in the defendant's answer, or otherwise, or as to the custody of the children; that the defendant, an able-bodied and healthy young man, capable of earning $100 a month or more, without cause, willfully abandoned and deserted his wife and children, going to California, and later returning to Utah and leaving them without a dollar and without any means of support whatever, shut off all credit at the stores where theretofore they had traded and obtained groceries and household necessaries. The plaintiff, about two weeks thereafter, finding herself in such distress and in a helpless condition, requested the mother of the defendant to take the children until the plaintiff could get employment of some sort. The defendant's mother, because of her age, did not feel able to care for both children, but took one of them. The other

was left with the plaintiff's sister-in-law. The plaintiff then sought and obtained employment in a store.

The parents of the defendant had no knowledge that defendant had deserted the plaintiff, or that he had gone to California, until the plaintiff informed them. The defendant did not, after he went to California, nor after he returned to Utah, give or send the plaintiff anything. The plaintiff's sister breaking her leg in an accident, and for that reason unable to care for the child left with her, both children, at plaintiff's request, were left with the parents of the defendant. The evidence clearly shows that the defendant, without cause, deserted the plaintiff as in the complaint alleged. The evidence also clearly shows that the defendant was guilty of some of the alleged cruelty. The evidence is just as clear that the defendant willfully failed and refused to support the plaintiff. There is no substantial dispute as to that. The claim made by the defendant that he was relieved from his duty and obligation in such respect because of his alleged agreement that the parties were to live separate and apart has no basis either in fact or in law.

The plaintiff at the time of the trial was, and for some time prior thereto had been, working at the Golden Rule store in Ogden, where the parties lived, earning $55 a month. She had no other means of support. As testified to by her, it was her desire, with her own earnings and with the defendant's help, to get a small apartment, where she could be with her children mornings and evenings, and during the daytime, while at the store, have an attendant, if necessary, to look after them. Apparently the parents of the defendant are not objecting to returning the children to the plaintiff, and took them only temporarily to help the plaintiff. We think the merits of the case in every particular are with the plaintiff and against the defendant. Indeed, there is not much to commend the defendant's course of conduct, leaving the plaintiff and refusing to support her.

The findings and judgment of the court below are therefore disapproved and vacated, and the cause remanded to the district court, with directions to make findings responsive to the complaint and on the grounds ■ therein stated, and grant a decree of divorce as prayed in the complaint; award the custody of the children to the plaintiff, and require the defendant, from the commencement of the action, and until the further order of the court, to pay to the plaintiff $50 a month for her support and maintenance and that of the children, and to require the defendant to pay the plaintiff, as and for counsel fees, $75 and all costs incurred by plaintiff in the lower court and in this court. Such is the order.

THURMAN, C. J., and HANSEN, J., concur.

GIDEON, J. (dissenting). The parties to this action were undeveloped children at the time of the marriage. The plaintiff was a young girl about 20 years of age. Defendant was of the same age. Plaintiff had gone through the eighth grade, and thereafter had taken a short course in a local business college. Defendant's education was even more limited. The parties were without property. For 11 months after their marriage they resided with the parents of defendant, and apparently got along very nicely during that time. Afterwards the defendant obtained employment and the parties then made their home in Ogden City. There their two children were born. It appears from the testimony that the young man had never learned the art of dancing, whatever that may be. Apparently his wife was devoted to that art, and frequently attended dances. She taught her husband to dance. To use her expression, he thereafter became "dance crazy." They attended dances, and the conduct of the wife while attending one of these dances led to the alleged desertion.

It is not suggested in the testimony that plaintiff's conduct at that dance was other than mildly indiscreet. Her husband testified that he saw her dancing partner "kiss"

her while dancing at a pleasure resort known as the White City. The husband very naturally objected to this conduct on the part of his wife. About a week after the above incident the parties were contemplating attending another dance at the same place. The quarrel that followed the conversation respecting this anticipated dancing party resulted in the defendant leaving home. Following the separation of the plaintiff and defendant, in November, 1925, the two minor children were placed with relatives of the defendant. His mother had one and his sister another, the younger. Before the trial of this action the sister of the defendant met with an accident, and she was no longer able to care for the child, and it was taken and left with the parents of the defendant. Thereafter both children resided with defendant's parents. It is shown by the evidence that the father and mother of defendant are substantial farmers residing in the country near Ogden City. The children had their home there, and all the testimony is to the effect that they were well treated and well cared for.

After the children were given to defendant's parents and his sister, the plaintiff did practically nothing for the support of the children; in fact, she saw them seldom. Plaintiff was employed at various places, and at the date of the trial was in the employ of a dry goods establishment at a salary of $55 a month. Her earnings were all used for her own support. Immediately following the separation of the parties, defendant went to California. He remained there for a short period. He then returned to Ogden, where he obtained employment. His testimony is undisputed that he received a salary of approximately $96 a month, and that he gave all of his earnings, except $10 a month to his mother, who was caring for his children. He also made his home with his parents.

The testimony respecting the alleged acts of cruelty possibly ought not to be characterized as "ridiculous." "Puerile" would be a more accurate adjective to use. To illus-

trate: Much is said in the testimony and in the briefs about an incident where the defendant put his wife in a bathtub and turned on the water. That incident appears to be just this: Defendant was in the bathroom shaving. His wife went in and playfully threatened to throw some water on him. He stated that, if she did, he would put her in the bathtub. She accepted his dare and threw the water on him. She ran out of the room, and he followed her and caught her in the bedroom. Both plaintiff and defendant testified that this was "in fun." Notwithstanding this was considered by both parties at the time as being merely play, it is rehearsed in the complaint and in the testimony as an act of extreme cruelty.

I do not hesitate to say that, in my judgment, under the plaintiff's own testimony, the trial court should have denied her a decree of divorce, even if the defendant had allowed the case to go by default. As hereinbefore stated, the parties were mere children. Their minds were not fully matured at the time of the marriage. As a result of the marriage, two helpless infants were born. This court proposes to take those two children from the grandfather and grandmother, located as they are in a home upon a farm, with healthful and pleasurable surroundings, and give them to the mother, where she can care for them in some apartment and hire a strange woman during the day, when she is working, to look after the needs of the children. That she expects to keep them in an apartment is reflected in her testimony.

The trial court, in my judgment, by denying plaintiff a divorce and leaving the children in the home of the grandparents, was justified by the plaintiff's own testimony. The court was doubtless of the opinion that the children were better off in the home of the grandparents than they would be under the control of the mother, or, for that matter, under the control of the father, of the children, and with that view I heartily agree.

The facts presented in this case make it difficult for a court to determine just what ought to be and what ought not to be done. The parties to this suit are entitled to scant consideration by a court of equity. The interest of the children should, and I am sure did, control the trial court in rendering its judgment in this case. It is shown that the grandfather of the children is 60 years of age and the grandmother 54—not too old to be able to care for children of tender years. The trial court had the parties before it, saw their demeanor, observed their candor, or the want of candor, as well as their manner of testifying. That court was therefore much better able to determine what probable attention these minor children would receive from their mother as compared with the treatment they are receiving while in the home of their grandparents. It may be that the trial court indulged a hope that the parents, as they grow older and realize more fully their responsibility, will again live together and raise their family as the law contemplates they should.

Appellate courts should hesitate, in the face of a record such as we have here, to disturb the trial court's findings or its judgment. The testimony in this case is that the father of the children is working, giving to his mother practically all he makes, and it may fairly be assumed that she uses that money for the benefit and care of the children of her son and the plaintiff. The trial court thought it best to hold the parties to this action to their marital obligations, and leave the children where they themselves had placed them, and I agree with that court in that conclusion. In any event, if this court is of the opinion that the testimony warrants a decree of divorce, the custody of the children, the amount of alimony, and the amount of attorney's fees allowed plaintiff's counsel should be left to the trial court to determine, under the facts now in the record or which may be developed upon a further hearing respecting these particular matters. From the fact that the plaintiff may be entitled to a decree of divorce, it does not follow that the

court should award to her the custody of both children or of either of them.

I therefore dissent.

CHERRY, J. I concur with Justice GIDEON.

On Petition for Rehearing.

STRAUP, J. A petition for rehearing is filed on behalf of the defendant. He, among other things, urges that the awards for alimony and for the support and maintenance of the minor children, requiring him to make back payments at the rate of $50 a month from the commencement of the action, are excessive, and that he has not the ability to meet them.

On further consideration of the matter, we have concluded to modify our opinion in such particular. Our direction and order thus is that the defendant be required to make such back payments at the rate of $50 a month from the time our original opinion in the cause was filed, which was on March 14, 1928, and that he continue to pay to the plaintiff, for her support and maintenance and for the support and maintenance of the minor children mentioned in the record, the sum of $50 each and every month until the further order of the court.

In all other particulars the directions and orders heretofore made are confirmed, and the rehearing denied.

THURMAN, C. J., and HANSEN, J., concur.